Filed 5/22/23  Glaros v. Department of Transportation CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| NICHOLAS GLAROS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DEPARTMENT OF TRANSPORTATION,<br><br>    Defendant and Respondent. | B319249<br><br>(Los Angeles County Super. Ct. No. 19GDCV01085) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Joel L. Lofton, Judge.  Affirmed.

Nicholas Glaros, in pro. per., for Plaintiff and Appellant.

Erin Holbrook, Chief Counsel, Jerald M. Montoya, Deputy Chief Counsel, Kirsten R. Bowman and Razmig Khayalian for Defendant and Respondent.

_____

The Department of Transportation (Caltrans) acquired land in South Pasadena to build an extension of the Long Beach Freeway. After abandoning the freeway project, Caltrans offered to sell a property to appellant Nicholas Glaros. The deal lapsed when Glaros failed to secure financing. He then sued Caltrans.

The trial court sustained demurrers to Glaros's fourth amended complaint without leave to amend, entered judgment for Caltrans, then denied Glaros's motion to vacate the judgment. The court's denial of equitable relief was not an abuse of discretion because Glaros did not show extrinsic fraud or mistake. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Acting in propria persona, Glaros filed a complaint in August 2019 against Caltrans and California Housing Finance Agency (CalHFA). His first amended pleading, in November 2019, asserted tort and contract claims. The court sustained demurrers, gave Glaros leave to amend *only* his contract claim, and dismissed CalHFA from the lawsuit. After he "experienced an epiphany of greater comprehension" about the law, Glaros made further amendments, including new tort claims. The court gave him "one final opportunity" to state a claim in a fourth amended complaint (FAC).

The FAC alleges that Glaros rents a home in South Pasadena owned by Caltrans (the Property). Caltrans acquired the Property in 1975 for $27,700, for the purpose of extending State Route 710. It is a Craftsman home on a 11,836 square foot lot. By 2018, the Property was appraised at over $1 million.

In 2016, Caltrans conditionally offered to sell the Property to Glaros. To participate, he had to show low or moderate income and qualify for a loan from a financial institution. Glaros was

2

eligible for an affordable sales program, allowing him to try to purchase the Property.

In March 2018, Glaros signed a Purchase and Sale Agreement (PSA) for $135,231. It has a 120-day time limit to close escrow, plus one 30-day extension, if requested. The PSA "is not a financing agreement." Instead, Glaros had to obtain funds for the purchase within the time limits of the escrow; failure to do so "will result in the cancellation of this Agreement."

In signing the PSA, Glaros acknowledged that his purchase is subject to Covenants, Conditions and Restrictions (CC&R's), under affordable sales program regulations. He agreed to be bound by the CC&R's, which limit encumbrances on the Property. On resale, any appreciation in value would be divided between Glaros and CalHFA. The CC&R's state that the resale covenant is "senior to any other instrument," including lender liens.

Escrow began April 20, 2018, with closing scheduled for July 10, 2018. Glaros obtained an offer of financing. Caltrans required his lender to sign a Subordination Agreement accepting the limitation on lender liens in the CC&R's. It reads, in part, "A judicial foreclosure of the Use and Resale Covenant shall result in the lien of the Lender Documents on the Property being extinguished."

Glaros alleges that the Subordination Agreement was "redundant" and the PSA was "never lawfully amended to include [it]." In his brief, he writes that "there was no need for the Subordination Agreement" because the CC&R's "already contained the necessary language" to satisfy state law.

Glaros's lender initially agreed to sign the Subordination Agreement. However, in August 2018, the lender refused to sign it and withdrew its loan offer. Caltrans gave Glaros 30 days to

3

acquire another loan.  When Glaros failed to secure financing, Caltrans cancelled the sale and refunded his deposit. This lawsuit ensued.

Caltrans demurred to the FAC.  At the hearing on May 28, 2021, the court noted that it previously rejected the tort claims, so breach of contract is the sole remaining cause of action.  Glaros replied that the harm he suffered was "the result of a breach of an obligation, not arising from contract."  Upon the court's questioning, Glaros confirmed that he was proceeding "not on a breach of contract theory but essentially on a noncontractual theory which is in tort," namely concealment, misrepresentation, and infliction of emotional distress.  The court concluded that the Subordination Agreement is consistent with the CC&R's.  It sustained demurrers to the FAC without leave to amend.

In September 2021, Glaros sought reconsideration, arguing that he did not cite the correct statute for his contract claim and "never really comprehended the main purpose of hearings on motions."  He asked the court to revoke its February 2021 ruling eliminating tort claims from his *third* amended complaint, arguing that they are "absolutely essential."  He sought leave to file a fifth amended pleading and restart discovery.

Caltrans opposed the motion arguing that it was untimely; Glaros's misunderstanding of the law is not grounds for relief; and Caltrans is immune to claims of fraud, deceit, concealment, breach of fiduciary duty, and infliction of emotional distress.  At a hearing on December 3, 2021, Glaros confirmed that he sought reconsideration of a February 2021 ruling on his third amended complaint, despite filing the FAC after that ruling.  The court denied Glaros's motion as untimely; further, he did not

4

demonstrate that he is entitled to relief for excusable neglect or mistake.

Undeterred, Glaros filed a motion on December 20, 2021, asking to vacate (1) the February 2021 order sustaining demurrers to his third amended complaint and (2) the May 2021 order sustaining demurrers to the FAC without leave to amend. He asked to file a fifth amended complaint and restart discovery.

The court dismissed Glaros's case and entered judgment for Caltrans on January 4, 2022. On January 20, 2022, the court denied Glaros's most recent motion, deeming it a motion to vacate the judgment. On March 7, 2022, Glaros appealed the order made after judgment.

## DISCUSSION

### 1. Appeal and Review

Denial of a motion to vacate a judgment is an appealable postjudgment order. (Code Civ. Proc., § 904.1, subd. (a)(2); *Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1137.) We review the order for abuse of discretion. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*).) The order is presumed correct, and appellant has the burden of showing abuse of discretion. (*McClain v. Kissler* (2019) 39 Cal.App.5th 399, 413, 415.) The test is whether the court exceeded the bounds of reason. (*Anastos v. Lee* (2004) 118 Cal.App.4th 1314, 1318–1319.)

### 2. Equitable Power to Grant Relief

In his moving papers and brief, Glaros invokes the court's inherent equity powers as the basis for relief. He argues that after the six-month deadline allowed by Code of Civil Procedure section 473 lapses, he "may still be able to obtain equitable relief based on extrinsic fraud or mistake."

5

Glaros is correct that a court may grant equitable relief. However, " '[W]hen relief under [Code of Civil Procedure] section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.' " (*Rappleyea, supra,* 8 Cal.4th at pp. 981–982.) "The question is one of the court's equitable power. If the court could properly refuse to invoke that power to vacate the order, its ruling and the ensuing judgment must be sustained." (*Id.* at p. 981.)

A party moving for equitable relief from judgment must show extrinsic fraud or mistake, his reasonable reliance on it, the existence of a meritorious defense, and reasonable diligence in seeking relief. (*Rappleyea, supra,* 8 Cal.4th at p. 982.) The terms "extrinsic fraud" and "extrinsic mistake" are interpreted broadly, encompassing "almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." (*In re Marriage of Park* (1980) 27 Cal.3d 337, 342; *Hudson v. Foster* (2021) 68 Cal.App.5th 640, 664 (*Hudson*).)

### a. Extrinsic Fraud

Extrinsic fraud occurs when an adversary deprives a litigant of notice of a hearing and an opportunity to present his case. (*Craney v. Low* (1956) 46 Cal.2d 757, 759; *Davis v. Davis* (1960) 185 Cal.App.2d 788, 793.) A common ground for relief from extrinsic fraud is when a "party is induced not to appear, relying on representations, in the context of a confidential relationship, that his interests will be protected." (*Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1114.)

6

"Fraud is extrinsic when a party is prevented from fully participating in the proceeding or deprived of the opportunity to present a claim to the court by the fraudulent conduct of another party, as opposed to the moving party's own negligence. [Citations.] 'The clearest examples of extrinsic fraud are cases in which the aggrieved party is kept in ignorance of the proceeding or is in some other way induced not to appear. [Citation.]' [Citation.] Other examples include 'concealment of the existence of a community property asset, failure to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed).' " (*Hudson, supra*, 68 Cal.App.5th at p. 664.)

By this standard, Glaros's claim for relief fails. There is no proof that Glaros lacked notice of the demurrers. On the contrary, he opposed them in writing and in person at hearings. He presented his claims to the trial court, which repeatedly gave him leave to amend. Caltrans and Glaros are landlord and tenant: They do not have a confidential relationship that compelled Caltrans to help Glaros. This is not comparable to *Hudson, supra,* 68 Cal.App.5th at pages 662–667, where the defendant conservator had a fiduciary duty to account for a conservatee's money.

No relief is available for *intrinsic* fraud. "Fraud is generally considered intrinsic when a party had notice of the action and an opportunity to present a case, but unreasonably neglected to protect themselves from fraud or mistake involving the merits of the proceeding." (*Hudson, supra,* 68 Cal.App.5th at p. 664.) Intrinsic fraud may consist of untruths, half-truths, and deceitfully misleading affidavits, arguments and declarations

7

from one's adversary. (*Beresh v. Sovereign Life Ins. Co.* (1979) 92 Cal.App.3d 547, 553.)

Glaros argued below that "the State employees and contractors, who worked together to injure Plaintiff were employees or contractors of Caltrans." He includes counsel for Caltrans, who pleaded claims in the alternative or allegedly made false claims. Glaros wrote that Caltrans had "a tactical strategy for the direct purpose of delaying and diverting [his] attention." He has described intrinsic fraud.

Glaros believes Caltrans could have helped him—first with his efforts to purchase the Property and later to prove his court case. Caltrans had no duty to help him. Though Glaros may have been confused or misled, it was not *extrinsic* fraud involving notice or affecting his ability to appear and be heard. He fully participated, even if he was unsure of the law or process.

### b. *Extrinsic Mistake*

Extrinsic mistake occurs "when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits"; for example, if " 'a mistake led a court to do what it never intended.' " (*Rappleyea, supra,* 8 Cal.4th at p. 981.) In other words, " ' "it is not a mistake of the law, or an inadvertent conclusion as to what the law is, but a mistake or inadvertence in doing something not intended to be done." ' " (*Ibid*.)

As described by our Supreme Court in *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471–472, extrinsic mistake is found when a party becomes incompetent but no guardian ad litem is appointed; a party mistakenly relies on another to defend or on an attorney who is incapacitated to act; the court does what it never intended; a party's mistaken belief prevents proper notice of the action; or a party is disabled when judgment is entered.

8

Glaros's papers and briefs do not show extrinsic mistake. He is not incompetent or disabled at the time of judgment; he did not rely on another or on an attorney who failed to act on his behalf; and the court heard the parties' arguments and intended to make its rulings. Instead, Glaros made mistakes or reached inadvertent conclusions as to what the law is. These are not grounds for relief. (*Rappleyea, supra,* 8 Cal.4th at p. 981.)

### 3. Self-representation Does Not Affect the Outcome

Glaros emphasizes his status as a self-represented litigant. He explained below that his defective pleadings were caused by his misunderstanding of the law and legal procedures. He wrote that he "has reached a point where he can begin to learn other law matters pertaining to his suit which will be needful as his case moves forward."

The challenge of conducting legal research as a layperson is considerable. But Glaros has not shown that the judgment was caused by extrinsic fraud or mistake. (See *Rappleyea, supra,* 8 Cal.4th at p. 985 ["our focus is on the clerk's and plaintiff's incorrect advice rather than on defendants' ill-advised self-representation"].) Glaros's faulty research is not a basis for equitable relief.

"[W]e make clear that mere self-representation is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation. . . . A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea, supra,* 8 Cal.4th at pp. 984–985.)

The key point is that exercise of a court's equitable powers is available only upon a showing of *extrinsic* factors. (*Advanced Building Maintenance v. State Comp. Ins. Fund* (1996) 49 Cal.App.4th 1388, 1395.) For two years, Glaros tried to state a claim, without success. His mistakes were intrinsic.

### 4. Glaros Did Not Show a Meritorious Case

The court's refusal to allow a fifth amended complaint was not an abuse of discretion. A complaint "shall not be amended more than three times" absent an offer of proof the defects can be cured. (Code Civ. Proc., § 430.41, subd. (e)(1).) Glaros was not able to cure the defects.

Caltrans is immune to Glaros's claim that its employees committed fraud or misrepresentation. (Gov. Code, § 818.8; *Chevlin v. Los Angeles Community College Dist.* (1989) 212 Cal.App.3d 382, 390 [immunity to fraudulent concealment claim].) Immunity attaches to common law claims for emotional distress. (Gov. Code, § 815; *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899; *Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 854 [emotional distress is a common law claim].)

Glaros did not state a claim for breach of contract. His pleading shows he did not secure financing, a condition of the PSA. His lender refused to sign the Subordination Agreement, which Glaros alleged is "redundant" because its terms are in the CC&R's; however, the lender was not a party to the PSA or the CC&R's. To be bound by covenants in the CC&R's, the lender had to sign the Subordination Agreement, which (as to the lender) was not redundant. Finally, Glaros told the court, before it ruled on the FAC, that he was proceeding on tort theories, not

10

on a breach of contract theory, thereby abandoning his contract claim.

## DISPOSITION

The order is affirmed.  The parties to bear their own costs on appeal.

NOT TO BE PUBLISHED.


KWAN, J.*

We concur:



ASHMANN-GERST, Acting P. J.



CHAVEZ, J.

---

* Judge of the Superior Court of Los Angeles County assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.